ARONOW, Appellant, *v.* HILL et al., Defendants;
WAGNER, Administrator, Appellant.

(No. 6,570.)

(Submitted February 15, 1930. Decided March 21, 1930.)

[286 Pac. 140.]

154

*Messrs. Maddox & Church,* for Appellant, submitted an original and a reply brief; *Mr. Fletcher Maddox* argued the cause orally.

*Mr. Louis P. Donovan* and *Mr. Henry McClernan,* for Respondent, submitted a brief; *Mr. Donovan* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

Plaintiff Aronow alleges in her complaint that on December 15, 1921, the Secretary of the Interior issued to one Gordon Campbell an oil and gas prospecting permit covering forty-six 40-acre tracts, or 1840 acres, and that by mesne conveyances she has succeeded to all the right, title and interest. of the permittee therein, is the owner of the permit, and has applied for the issuance to her of oil leases covering the lands. She avers that defendants claim some interest in the permit adverse to her, which claim is unfounded and without right. Other allegations of the complaint need not be noted here. Campbell defaulted.

Defendant Hill, admitting the issuance of the permit to Campbell, claimed title to twenty-seven 40-acre tracts covered thereby in virtue of an assignment made to him by Campbell on October 4, 1927; alleging that on December 21, 1927, the assignment from Campbell to himself had been approved by the Department of the Interior, which at that time authorized the issuance of leases to defendant. Answering further, defendant alleged that plaintiff in May, 1928, filed with the commissioner of the General Land Office her protest against the issuance of leases to the defendant, together with her application for the approval of certain assignments and the issuance to herself of leases on all lands covered by the permit; that on June 18, 1928, the commissioner made a ruling whereby plaintiff's protest and application were dismissed; that thereafter an appeal from the decision of the commissioner was taken by the plaintiff to the Secretary of the Interior, who, on August 21, 1928, affirmed the decision of the General Land Office; that no motion for rehearing was made and the right of the defendant to the issuance of the leases has been fully and finally determined and adjudicated.

Replying, plaintiff admitted the filing of the protest, together with her application for the approval of certain assignments and the issuance to her of leases on the lands cov-

ered by the permit, and the consideration thereof by the commissioner and by the Secretary of the Interior, but alleged that the protest had not been determined, "and that the Secretary of the Interior had made an order suspending further action therein until the final determination of this case."

After a hearing the court decided plaintiff's title to be good and valid as to twenty-one 40-acre tracts described in the permit, and that defendant has no interest therein. Defendant was given judgment for his costs. From this judgment, both parties appealed.

Plaintiff contends that the court should have awarded her all of the forty-six 40-acre tracts, saying that, while the court held her title good and valid as to twenty-one tracts, it did not find defendant to be the owner of the remaining twenty-five tracts and did not adjudge that the defendant was the owner of the same. It is further urged that the court erred in giving the defendant judgment for costs.

Defendant contends that the court erred in not awarding him all the twenty-seven 40-acre tracts assigned to him by Campbell.

To clarify the situation somewhat: Defendant made no claim to any of the 40-acre tracts awarded plaintiff, save two, and as to these, as will appear later, the Department of the Interior did not approve the assignment from Campbell to defendant. Plaintiff claims through two sources of title; as to nineteen 40-acre tracts, through a contract entered into between Campbell and the Royal Canadian Oil Company of Montana on October 28, 1924. The two 40-acre tracts respecting which defendant appeals are not affected by this contract. The commissioner of the General Land Office and the Secretary of the Interior have held that this contract did not effect an assignment of any of the lands therein described to the Royal Canadian Oil Company, but was an "operating agreement" between Campbell and that company. It is a contract whereby the company, among other things, agreed to prospect and develop the property in accordance with the requirements of the United States, and to pay all rentals,

royalties and other charges which might become due and payable to the United States in connection therewith; and to divide the oil and gas according to the terms of the contract. We think the government officers rightly construed the legal effect of the contract. This being so, plaintiff did not thereby obtain any right to a lease from the United States upon the lands mentioned in the contract. Whether, as the successor in interest of the Royal Canadian Oil Company of Montana, she may enforce the provisions of the operating agreement as against the defendant, we are not called upon to determine, because that question is not at issue in this action.

Secondly, plaintiff claims to be the successor in interest of Gordon Campbell as to all the lands embraced in the permit through an execution sale upon a judgment obtained by Belden & DeKalb against Campbell. During the trial counsel for plaintiff stated to the court that, although he had written to the clerk of the district court of Fergus county in ample time for certified copies of the judgment-roll, and of the execution issued to the sheriff of Toole county and the return thereon, these documents had not arrived, but he had telephoned the clerk who said he would send the original files. Anticipating that the papers might not arrive prior to the time it was necessary for the trial judge to leave Shelby, where the trial was being held, for his home at Kalispell, it was agreed that counsel for plaintiff might file certified copies of the documents with the clerk of the court, and that, upon inspecting the same, counsel for defendant could then file their objections thereto. Accordingly, in the course of the trial, counsel for plaintiff made offers as though the documents were then present in court: a certified copy of the judgment-roll, to be called Exhibit 10, a certified copy of the execution issued thereon, together with the return of the sheriff upon execution, to be called Exhibit 11. From the county records a certificate of sale purporting to have been issued following an execution sale upon the Belden & DeKalb judgment, a sheriff's deed executed to Belden & DeKalb (Exhibit 12), and a quitclaim deed from Belden & DeKalb to plaintiff Aronow

158

(Exhibit 13) were offered in evidence over defendant's objections.

The trial was had on November 17, 1928, and all of the evidence was received on that day, except Exhibits 10 and 11. These documents were filed with the clerk of the court on December 5, 1928. Thereafter counsel for defendant seasonably filed objections to the introduction in evidence of these exhibits and renewed objections to the introduction of Exhibits 12 and 13. The various objections interposed need not be stated at length, it being sufficient to say that the execution and the sheriff's return thereon do not at all relate to the property claimed by the defendant, do not furnish a link in the chain of title claimed by plaintiff. On February 1, 1929, and long after the evidence in the case was closed, plaintiff moved to substitute another certified copy of a writ of execution and sheriff's return thereon in the action wherein Belden & DeKalb were plaintiffs and Gordon Campbell was defendant. The motion was supported by the affidavit of one of plaintiff's counsel, tending to show that plaintiff's Exhibit 11 was unintentionally, and by mistake and inadvertence, introduced in evidence, and that another writ of execution and sheriff's return in the case aforesaid should have been introduced, alleging that counsel's attention was directed to the mistake by the objections filed by counsel for defendant. The court sustained defendant's objections to offered Exhibits 10, 11, 12 and 13, and denied plaintiff's motion to substitute another exhibit for Exhibit 11. Unless the motion to substitute were granted, the court's action in sustaining defendant's objections to the introduction in evidence of Exhibits 10, 11, 12 and 13 was correct.

Whether, after the evidence was closed, the court should have permitted the substitution of another execution and return thereon was addressed to the sound legal discretion of the court, and we say without hesitation that the court did not abuse its discretion in denying the motion. In the first place, mere confusion attendant upon the pressure of business is not

an excuse for want of preparation for trial, and, after counsel has been extended the privilege of supplying documents which should have been and could have been procured for admission in evidence for the trial, and has had ample time to get the documents and examine them, if the wrong documents are then put in evidence, it is his own fault. The attendant circumstances not only do not show an abuse of discretion in the action of the trial judge, but do show that he was justified in the action taken.

But counsel for plaintiff argues that the sheriff's certificate of sale and sheriff's deed were admissible in evidence and prima facie showed a sale of the property in controversy under execution without the necessity of first offering in evidence the judgment upon which the execution issued, the execution itself, or the sheriff's return thereon. This position is maintainable in those states in which by statute the recitals in a sheriff's deed are made prima facie evidence of the facts therein set forth, but in Montana we have no such statute, nor equivalent statutes. The general rule, applicable here, is that one claiming under an execution sale, to make out a prima facie case, must produce the judgment and execution, with the return showing a levy, the sheriff's certificate of sale and the sheriff's deed. (3 Abbott's Trial Evidence, 1904; *Carter* v. *Smith*, 142 Ala. 414, 110 Am. St. Rep. 36, 38 South. 184.) The overwhelming weight of authority sustains this view. See *Ames* v. *Young*, 122 Me. 331, 36 A. L. R. 984, 119 Atl. 863, which contains an exhaustive note covering the subject.

The permit from the United States to Campbell was, as the pleadings admit, dated December 15, 1921. The operating agreement between Campbell and the Royal Canadian Oil Company of Montana bears date October 28, 1924. On October 24, 1927, Campbell assigned to the defendant all his right, title and interest in the permit to the extent of twenty-seven 40-acre tracts, to be embraced in leases designated as 051863A and 051863B, and authorized the issuance and deliv-

ery of the leases to defendant. The geological survey had reported to the Department that well No. 1 on the lands covered by the permit was in bad condition and should be put in proper repair, and that wells Nos. 2 and 4 should be properly abandoned. On September 14, 1927, the register at Great Falls was advised of the amounts due the government in rents and royalties on account of the Campbell permit, and payments were required. Campbell failed to make any payment, but the defendant wrote the commissioner claiming to be Campbell's assignee and asking the amount due. Being advised by the commissioner, defendant transmitted his assignment, together with a surety bond, in the sum of $5,000, and paid rentals and royalties to the amount of $1,560.53. Thereafter the commissioner, under date of December 5, 1927, and before he had any knowledge of plaintiff's claims to the lands under a sheriff's deed, approved the assignment made by Campbell to the defendant, with the exception of two 40-acre tracts. During the month of May, 1928, plaintiff filed with the commissioner her protest against the issuance of the leases to defendant, together with her application for approval of certain assignments and the issuance to her of leases on all the lands covered by Campbell's permit. She also submitted a certified copy of the sheriff's certificate of sale on execution, the execution running in favor of Belden & DeKalb against Campbell, and certified copies of the sheriff's deed to Belden & DeKalb, the quitclaim deed from Belden & DeKalb to plaintiff, all of which documents cover the lands included in defendant's assignment. The commissioner did not deem it necessary to consider the merits of the assignment, if such it was, secured by plaintiff Aronow under the execution. Among other things, he said: "In general the Department has been very liberal in approving assignments where assignees are shown to be qualified. But in this case while the disputes of claimants have been going on, wells have been damaged and the lands denuded. The government has a right to protect its own interests. It is concerned primarily

in having the lands properly developed. To this end the assignment to Hill was recommended for approval. While then, the adverse claimants had delayed making the required payments and had allowed the property to deteriorate, Hill paid the rentals and royalties as above shown, and furnished security in the sum of $5,000. At the time of the approval of the assignment, the legal right to the lands appeared to be in Hill so far as the record of this office disclosed. Persons who had other claims to the lands in question had slept on their rights by failing to present their claims. After Hill has in good faith made payment of the moneys due, and the Department has approved his assignment, I cannot recommend that the approval be revoked in order to support the claims of Anna Aronow. * * * ''

Plaintiff then appealed to the Secretary of the Interior, who affirmed the decision of the commissioner. The first assistant secretary, writing the opinion, said: ''The Department cannot in justice and fairness revoke the assignment to him [defendant] which was approved in the absence, at that time, of any objection of record on the part of Aronow, or of any charge at this time that such approval was obtained through fraud or misrepresentation on the part of Hill. The Department cannot, and will not attempt to settle the disputes of the parties in this proceeding. Recourse to the local courts is open to both, if differences cannot otherwise be settled.''

Section 12½ of the Regulations of the General Land Office concerning oil and gas permits, promulgated under the authority of section 13 of the Act of February 25, 1920 (41 Stats. 441, sec. 221, tit. 30, U. S. C. A.), is as follows: ''Assignment of Permits.—Permits after being awarded, may be assigned to qualified persons or corporations upon first obtaining consent of the Secretary of the Interior. Mere rights to receive a permit are not assignable.''

The reasons which impelled the commissioner to withhold his approval from the assignment as to the two 40's in the assignment from Campbell to defendant do not appear in his

decision, nor in this record. But it is apparent that he had evidence before him which is not before the court in this case. The assignment from Campbell to the defendant may have been valid as between themselves, but facts and circumstances may have appeared to the commissioner which justified him in refusing to approve a portion thereof. That the Department of the Interior has the right to withhold its approval in such case there can be no doubt. (*Isaacs* v. *De Hon,* 11 Fed. (2d) 943.) The officers of the Land Department are specially designated by law to receive, consider and pass upon proofs presented with respect to matters of this character, as the supreme court of the United States said in *Shepley* v. *Cowan,* 91 U. S. 330, 340, 23 L. Ed. 424: "If they err in the construction of the law applicable to any case, or if fraud is practiced upon them, or they themselves are chargeable with fraudulent practices, their rulings may be reviewed and annulled by the courts when a controversy arises between private parties founded upon their decisions; but, for mere errors of judgment upon the weight of evidence in a contested case before them, the only remedy is by appeal from one officer to another of the Department." We quoted the foregoing language in *Small* v. *Rakestraw,* 28 Mont. 413, 104 Am. St. Rep. 691, 72 Pac. 746, affirmed 196 U. S. 403, 49 L. Ed. 527, 25 Sup. Ct. Rep. 285.

In *Love* v. *Flahive,* 33 Mont. 348, 83 Pac. 882, 883, it was said: "If it be assumed that the finding of the local officers was erroneous, as not being in accordance with the preponderance of the evidence, or that the decision of the Secretary was wrong for the same reason, yet what the evidence before them was does not appear; and, if it did, this court could not assume to review it and reach a different conclusion, for, in the absence of fraud, the findings of the officers of the Land Department upon all questions of fact are conclusive upon the courts. (*Small* v. *Rakestraw,* supra, and cases cited.)"

There is not any charge here, nor even an intimation, that Hill was in any respect guilty of fraud or misrepresentation, nor that he did anything he should not have done. Nor is

there any criticism of the officers of the Department of the Interior.

To sum up, it appears that upon the record before the district court the plaintiff was not entitled to judgment against the defendant as to any of the tracts described in the assignment from Campbell to defendant. On the other hand, it appears that, for reasons deemed sufficient by the Department of the Interior, the assignment, in so far as it affects the two 40's in conflict between the parties here, was not approved. Consequently, as to those 40's, the defendant is not entitled to judgment against the plaintiff. Whether upon a proper showing, the Department of the Interior may decide that the plaintiff is entitled to these two 40's, or may revise its judgment respecting the assignment thereof to the defendant, is no concern of ours.

Plaintiff criticises the judgment upon the theory that, while the court decided she was entitled to twenty-one of the forty-six tracts, it did not make any disposition as to the other twenty-five. While the judgment, it must be confessed, is inartificially drawn, we think its purport is not doubtful. Judgment in effect was rendered against the plaintiff as to twenty-five of the twenty-seven 40's. As to these clearly plaintiff takes nothing. The effect of the judgment was to award to the defendant twenty-five of the twenty-seven 40's he claimed. He failed as to the two 40's only. Under these conditions the court did not err in rendering judgment for defendant for his costs. (Secs. 9787, 9788, Rev. Codes 1921.)

Prior to the argument here the death of the defendant Hill was suggested, and Charles Wagner, as administrator of the estate of R. R. Hill, deceased, was substituted as party defendant.

The judgment should be modified by eliminating from the tracts of land awarded to the plaintiff the two 40's in controversy between the parties, and as so modified, it shall stand affirmed.

Each party shall pay one-half of the cost of preparing the transcript; otherwise plaintiff and defendant shall pay her or his own costs:

ASSOCIATE JUSTICES MATTHEWS, GALEN and ANGSTMAN concur.

MR. JUSTICE FORD, deeming himself disqualified, takes no part in this opinion.